The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Good morning. Good morning. Please be seated. Oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. All right, I see we have one of our cases that's been dismissed by joint motion and we're prepared to hear argument in Kelly v. Town of Abingdon and Ms. Rose, is it? We'd be happy to hear from you. Thank you, Your Honor. Good morning. May it please the Court, my name is Monica Morose and I'm here on behalf of the appellant, Greg Kelly. The issues in this underlying case that resulted in this appeal arose from Mr. Kelly's employment with the Town of Abingdon as their town manager. And the operative time period is approximately 2016 to May of 2018 when he separated from his employment. Mr. Kelly filed a complaint in August of 2019 alleging four claims under the Americans with Disabilities Act. The District Court in February of 2020 ruled on a motion to dismiss that the claims should all be dismissed for failure to state a claim. It also ruled kind of independently that Mr. Kelly's request for accommodation, a January 10, 2018 letter, could not, as a matter of law, constitute a request for accommodation. Following the ruling, Mr. Kelly amended his complaint, added facts, and sought leave to amend. On May 20, 2020, the District Court ruled on the motion to amend and concluded that Mr. Kelly's failure to accommodate and retaliation claims could go forward, but in a reduced aspect because the court adhered to its ruling from the first motion that the request Mr. Kelly made actually could have been a request. The court also ruled in the motion to amend that it would be futile to allow the interference and the discrimination claims forward because he would not survive a motion to dismiss on those claims. So we're here on the motion to dismiss ruling and on the motion to amend ruling. Because the motion to amend ruling was made on futility grounds, the court reviews all of the issues before it today de novo. First, the court erred on motion to dismiss when it concluded that Mr. Kelly's January 2018 letter could not, as a matter of law, be a request for accommodation. And, Your Honors, the court got it wrong there because the letter met the threshold requirements to be a request for accommodation. And the requests were sufficiently linked to Mr. Kelly's disabilities. The court, in its ruling, suggested that Mr. Kelly needed to be more specific. He needed to... The basis of all of this seems to be the disability, am I correct? The... I simply had a question as to what is the disability? Mr. Kelly alleged in his complaint that he suffered from anxiety, depression, and high blood pressure. Well, in the letter outlining the disability and requesting an accommodation, as I understand it, you just mentioned that the disability, if it is a disability of high blood pressure and anxiety, were they mentioned anywhere in the letter to the employer? The letter did not mention the specific disabilities, but under the law... Why wouldn't you mention the disabilities in order to give the employer a chance to accommodate the disability? Well, quite simply, Your Honor, by the time the letter had been sent, Mr. Kelly had advised the employer of his disabilities already, through notice, by filing EEOC charges that alleged disability discrimination and included information about his disabilities, and also made independent disclosures to his supervisors regarding those disabilities. Building on Judge Wilkinson's question, I was struck by the fact that I think I have the letter seeking an accommodation. It doesn't seek an accommodation for any disability. It seeks an accommodation to regarding the daily office environment, and then there are whole things about we should get along better and we should treat each other with respect. That doesn't sound to me like you should give me some extra help because I have some sort of disability, as recognized by the federal statutes. So maybe you can point to me where in this letter, which you say is the request for accommodation, he seeks accommodation because of his disabilities. Yes, Your Honor. It's not the letter. It's a 280. Maybe you can go through it and show me where it says that. Or do you concede it doesn't say that? Your Honor, it does not say the word disabilities. Well, then how can it be a request for accommodation because of a disability if it doesn't mention a disability? Well, Your Honor, it says in the first sentence of the letter that it is in accordance, it's made in accordance with the Americans with Disabilities Act. It does say that. You're absolutely right. But then it doesn't do that. So you can't label something as a request for accommodation and then not request any accommodation under the Americans with Disabilities Act. That doesn't count as a request for accommodation under the Americans with Disabilities Act. Well, Your Honor, the law is that the employer needs to be on notice of the disability and the employer needs to be on notice of a request for assistance. A request for assistance because of the disability. You can have a disability and you can request better working conditions. Well, the law… Because they're not married. Well, Your Honor, the law is that, you know, by my reading, is that there are no magic words that need to be uttered in order for this to… What do you think is your strongest precedent that does the same thing as your client tried to do here? In other words, we have a letter seeking accommodation about working conditions and we have him saying he has a disability and therefore the employer should know that this is also a request for accommodations because of his disability. Well, because it refers to the Americans with Disabilities Act. I mean, that's… Well, what I have are cases that say that emails, emails once an employer is on notice of a person's disability, emails asking for help and regarding, like, related to that disability can be… So where are emails and other things that you rely on in the… Where are the JEA references to them? Well, I'm not talking about Mr. Kelly's emails. You asked me what cases I have. Let's put the employer on notice and give me the JEA reference to it. Well, the EEOC charges put the employer on notice. When were the EEOC charges filed? Those are in the JEA reference. I'm sorry, to those would be 246, paragraph 43 of the amended complaint. No, no, no, no, no. I thought you said that there were JEA… I thought you said that there were EEOC things filed. Do we have the EEOC complaint in the record? No, Your Honor. The charges are not attached. The complaint alleges that Mr. Kelly placed his employer on notice by filing EEOC charges, and that is the JEA reference I was referring to. The problem that I think we are struggling with is that it's also very vague. The disability, whatever it is, is vague, and when I mentioned in the linchpin of your case, which was in the letter, and exactly what the employer was supposed to do is also vague because it doesn't know what the disability is and it doesn't know what the request for accommodation is. So how is the interactive process, which the Act envisions, how is that supposed to get off to any kind of meaningful start? And what you suggest is, well, all of this was set forth in the EEOC charges, but that again is not the way the statute is structured because the EEOC is very backlogged and the statute has a preference for an interactive process that resolves requests and differences informally and in the workplace without going into an adversary process. And if we say, well, the EEOC charges provide proper notice,  and again, the first time that the employer would have notice of the disability would be when the parties were in an adversary posture. And it's just not the way the process is supposed to work because the EEOC, as I say, they are terribly backlogged and all the courts have mentioned one way or another that it is preferable to resolve these things informally through an interactive process, through discussion, and that never happened here. You're right, Your Honor. The interactive process never did happen here at all. And that is despite the fact that Mr. Kelly gave them notice of his disabilities. Your Honor, I appreciate that the EEOC is backlogged. You are absolutely right. But the employer had notice of those charges regardless of what the EEOC was doing with them. And the employer had notice of the disabilities and they had notice of his request for assistance. And this court in Jacobs stated that those two things together, those two things together mean that you engage in the interactive process. I hear you. But the problem I'm having, and maybe you can help me with it, okay, let's assume that he has articulated a disability at some point to his employer. But this request for accommodation, does it relate? There's no bridge to the disability. It's all about regarding better working conditions with the purposes of efficiency and implementation of the working conditions. And so there's got to be a bridge. Well, Mr. Kelly alleged that, like I said, he had anxiety, depression, and high blood pressure. He also alleged that the toxic nature of his work environment exacerbated his disabilities, causing him... Maybe I'm not making myself clear. Okay, so I'm assuming for purposes of this discussion right here that he has a disability, right, and that he has asked for an accommodation for something. But I don't see the bridge between the disability and the request for accommodation. Because all of the items that he asked for an accommodation for are just for making this a better workplace, the daily office environment. Well, all of the things that he put in his letter are things that would reduce stress in the working environment. It would reduce stress in the working environment, which would... Okay. He doesn't say that, does he? It doesn't say that it would reduce stress, Your Honor, but the bar is fairly low at the pleading stage for this. I mean, we have the McNair case that we cited too from the district court of... But under your theory, every work environment that somebody finds stressful or unpleasant or whatever, which would include, like, millions of work environments, would form the basis of an ADA claim or a discrimination claim. And the district court, I think, encapsulated it correctly when he said the request for the accommodation was no more than a general, let's be nice, let's get along. But that doesn't get... That's the problem. It's all so very vague. And as I say, and my colleagues' questions have pointed it out, there's simply not a proper notice of the disability. There's not a proper notice of what the request for the accommodation is. And as Judge Mott points out, there's no bridge between the requested accommodation and alleviation of the disability. That's never spelled out. Normally, when we get these complaints, someone would say, I have a disability in terms of my mobility, and if I could have a wheelchair, or if I could have different working hours or whatever. These cases come to us with a fair degree of specificity. And the reason for that is, if you don't have that specificity, every vague request of dissatisfaction with stress and working environments, and working environments across the country produce stress. And it would turn everything into an ADA claim, and that goes way beyond what Congress has prescribed and what the EEOC has prescribed. There's no limiting principle to your position. There is no limiting principle. Well, Your Honor, I think that's precisely what the Americans with Disabilities Act is supposed to do. It's supposed to protect people who have disabilities in the workplace. And mental illness, anxiety, high blood pressure, those are disabilities. And yes, if the work environment is such that it exacerbates your illnesses such that you can't work in it, can't complete the essential functions of your job, then those should be accommodations, Your Honor, that are permitted, or at least that are permitted to be assessed, that are permitted to be assessed by the court. All that needed to happen here was an interactive process so that the parties could have come together like you suggested and discussed this and arrived at conditions that the employee could have lived in and could have worked in. And that is exactly what the Americans with Disabilities Act is for. And when we go to this next level of why is it not reasonable, that's not... Thank you, counsel. You have some rebuttal time, and if any of my colleagues have further questions... Mr. Gregory? Thank you, Your Honors. Thank you. Mr. Bell? Yes, Your Honor. Pleased to hear from you. Good morning. Pleased to court. My name is Cameron Bell. I represent the town of Abingdon in these matters. I'm happy to address any questions that the court has. Obviously, I agree with the questions that have been asked thus far. In addition to the things that the judges have pointed out in that letter, you'll also note that that letter was written on behalf of three different individuals who alleged in various EOC charges to have different disabilities. And as Judge Jones found on the motion to dismiss and in denying the motion to amend on some of the claims, that these requests were general workplace, let's get along requests not tied to anyone's specific disability. Some of them are hire more diversity. Some of them are things that didn't apply to Mr. Kelly as a male at all. When was the EEOC claim filed? There were actually three charges filed. Two of them were filed before this letter. Who filed those? All three of those individuals filed separate charges. They were represented by counsel. Mr. Kelly is a lawyer himself. In asserting disability discrimination? Yes, ma'am. Yes, Your Honor. In outlining what the disability was? Well, they were very vague also. They said that they were— Are they somewhere in the JA? I don't believe so. Well, they seem to be crucial to the case. Well, I don't think so, Your Honor. Well, if you're the plaintiff, they're crucial to the case. I agree. I would think you would think they're crucial too. Well, I think the way the district court decided these matters, and particularly on the failure to accommodate claim, recall where we are procedurally. So there was an initial complaint. The motion to dismiss was granted as to all claims other than the contract claim. Then there was a proposed amendment. Judge Jones actually let the failure to accommodate claim go forward. It was amended. Some of the things that counsel has argued today, Mr. Kelly had alleged in the amended complaint that he had asked verbally, some council members, I need to walk, I need to reduce stress. That went forward to summary judgment, and Judge Jones ruled on summary judgment that Mr. Kelly had failed to have a genuine issue of material fact on those issues, including reduced stress. That ruling was not appealed. The basis for the summary judgment ruling was that Mr. Kelly had not come forward with that the town had failed to accommodate his request for accommodation, and those accommodations separate from this letter were individual conversations and things of I have high blood pressure, I need to take short breaks, I like to take short walks. And so we deposed everybody in the town, and the plaintiff came forward with the evidence that they had, and Judge Jones dismissed that claim. So it really isn't this letter by itself really doesn't matter. I don't think in the scheme of things I agree with the questions that have been asked thus far that that letter is not what the ADA contemplates. There is no mention of it. I think even your colleague on the other side, as I understand her position, she's not relying on the letter alone. She's relying on the letter with previous EEOC charges, which she says put the employer on notice. So why don't you address that argument? So even if you add in the previous notice, this particular letter in terms of the request for accommodation, I don't think there's any question that the town was on notice that there were claimed disabilities. But the letter itself doesn't tie any of those disabilities, Mr. Kelly, to what should be accommodated. What Judge Jones found. Yes, Your Honor. Go ahead. No, I'm done. Thank you. Mr. Bell, you talk about the bridge. The bridge is normally developed by interaction. You were on notice that there was an ADA complaint, correct? Yes, sir. And you were on notice that as a result of what the employee felt that there were physical disabilities, for example, like the hypertension, the stress and things like that. Yes, sir. So what you're saying is that what you didn't know is what the accommodations that they were going to seek fully, right? So, for instance, in the letter it asks the council as a body to. Well, it has a litany of things about, as I think my dear colleagues have said, it seemed to be like can we get along things. That's true. But the point is this. This notice was meant to be given by lay people. And here you had the benefit of even an EEOC claim. But the point is that interaction is required. I don't know what accommodation is. I'm speaking as an employee. All I know is I'm hurting and it's because of the environment that you're subjecting me to at work. Now, the accommodation notice is we need something. We're going to hold them to a status that, well, you know, you've got to know exactly what the accommodation is because the accommodation really is for you, the employer, because you have to work together on that. Well, listen, you've got to get this many widgets made per day now. Now, how can I do my job and be relieved? That's an interaction. But wasn't your response we don't have to do anything for you because it doesn't even apply to us? Was that not the response? The factual response, Your Honor, was a letter, and that's cited in a complaint from the town saying it would engage in the interactive process. Now, the claim by the plaintiff was that no interactive process actually happened. Did it? I'm asking you, did your client say, well, yeah, we're responsible? I thought they were responsible. We're not your employer. We're not required to do anything. It doesn't even apply to us. That's not true? That's not true? Procedurally in the complaint, that's what the plaintiff alleges. And what was developed afterwards, and as I mentioned, was ruled on summary judgment, was that Mr. Kelly actually did take short walks. He actually did take short breaks. So the interactive, I think that the plaintiff would argue that there was not any interactive process, and that's what's alleged. What was the response to the accommodation? Well, the response to the letter was that these aren't requests for accommodation. These are we're going to go along. And I think the general response outside the pleadings was, of course, we're following the law. Of course, we're following the code of ethics. Of course, we're doing all the things that we should be doing. But the problem was how does that ---- I think you're trying to escape my question. No, sir. My question is, and this is a rare case because everybody on the council basically, I mean, they were the employer, right? You can see that. Yes, sir. And you're saying uniformly they came together and said we have a responsibility to not that we're going to grant you accommodation, but that we have a responsibility to even be subjected to the question of how we form it. I thought even the formation, the answer was we are not required to accommodate. We're not your employer. We have no responsibility. You're saying that's not true? No, sir. I don't think that that is even alleged in the complaint. But you're saying that's not true? That they didn't say we don't have to accommodate you at all, right? The formal response from the town was on behalf of their attorney, and the attorney said we will engage in the interactive process. Interactive process to do what? Well, that never got resolved. I'll concede that. No, not resolved. It never was understood that you took the responsibility to have any role in accommodation as required. You may be right or wrong, but you took a legal stance from the beginning. You put down the gauntlet. We don't have to do this. Now, like you said, why don't you go walking? Everybody can go get hypertension medicine on their own. You can go see a therapist. That's not accommodation. That's putting it all on employees. Why don't you physician heal thyself? I'm talking about employer engaging in whether or not there's accommodation, and you, your client, took the position we don't have to. And you're saying that's not true. I just want to make sure. I want you to say that if that's the case, that you're representing that they never took the position that we don't have to do this. Is that right? I don't think the town ever took the position that they don't have to accommodate disabilities. In response to this letter, the response was, these are not requests for accommodation to accommodate specific disabilities. We don't know what this letter is for. But I don't think there's anything in the record that says. Wait a minute. You do know what it's for. You knew what it was for. Because, for example, let's say you have a job. Let's say people always yell at people all the time. That's the way they do it. Get out of here. Do this. Do that. And then you say, you know, I need accommodation. I'm getting hypertension, nervous, I have anxiety, I can't sleep. I want to change the environment here. I want to engage with you. Can you do something about, can I do my job without this normal and toxic environment? I'm not hypothetical. Toxic environment. Did Mr. Kelly ever send or correspond with them in any way so that he tied those two things together? See, that's what I have a problem with. Not in terms of the letter itself. No, not the letter. But what proceeded to summary judgment was that Mr. Kelly had had individual interactions. And, again, as Judge Gregory pointed out, this is a council. It can only act as a body. So it's a five-member body. Three of them have to vote one way or the other. The things that are actually alleged in the complaint, and we didn't think that it should have gotten passed. Your basic position is that you're entitled to some modest degree of concreteness and specificity in terms of, number one, what the disability is, and, number two, what the accommodation would help, and, number three, some sort of a link or a bridge between the accommodation and the disability, some kind of a bridge or a link. And the problem here is that everything is at such a high level of vagueness that if general vague complaints about stress in the working environment suffice to state a claim under the ADA, then there simply is no limiting principle to it. Anybody who feels stressed by a working environment can proceed to EEO charges and a complaint. Bypassing the interactive process altogether, bypassing the fact that informal conversations and discussions can resolve many claims before they move into an adversary process. But your view, as I understand it, is pretty straightforward, and that is we're entitled to some specificity. It doesn't have to be detailed or anything else, but it has to be something. It has to be something. And then I'd like to know, well, what would you like us to do? What do you think is a good idea? And then we think that if this accommodation is in, this will relieve the disability. There's got to be some reason to think that the accommodation is related in some way to what the claim disability is. And that bridge and that link just hasn't been provided. It is all so vague. It's the vaguest case under the ADA that I think I've ever seen. Yes, sir. I agree completely. I understand that you agree with the questions that help you, but I'd like you to go back and try to respond to some of Judge Gregory's questions, which I thought were fair. I just don't understand. You really saying to the court you didn't know that the problem was the way that they were treating him, speaking to him in the manner that that was what he was saying was causing his problem. Are you saying that? Yes, sir. All right. So this link you talk about, you have the link. I disagree with it. He wanted them to speak to him as he was a civil way. He wanted to do his job without people saying things to him that were inappropriate in his view. Now, I agree you could take a different view about whether it's inappropriate or not. I'm not saying you had to concede that. But the point is you did know what he wanted, and you did know what he was Is that correct? I believe, Judge Gregory, and I'm not trying to avoid your question, I think what the town knew was that Mr. Kelly wanted the council to follow these basic rules. What it didn't know was how that was tied to any specific disability. So you didn't know that the hypertension and the stress he had was tied to that  No, sir, and that's not in the letter. This is not a four corners question about a letter for ADA. There's some people who can't even write. They're not even literate, but they work and they have a right to be able to say in their inarticulate way, I'm not being treated like a human being. I'm being disrespected. And they don't have a letter. So you're saying, oh, my goodness, where's the bridge of a letter? There is no bridge. The point is this, you knew that he did not want to be treated the way he was being treated. And you knew he was saying his medical conditions were exacerbated by that treatment, and that he wanted some accommodation, and the record is, basically, you basically said, oh, well, the letter didn't know, you talked about you have these health things and you talked about civility, but I had no idea they were connected. You didn't know they were connected. You disagreed, which is a fair response, I suppose. But the point is, you can't be saying you thought this person was just giving you a health report. Well, let me tell you how my health is. I thought I'd let you know, you'd want to know. You did know that. You knew that. And you knew what he was saying you were doing to him. You knew that. Are you saying that, I really want to get to pin you down as, you know, officer of the court, you're saying that he never told them that he was having these reactions because of the way they were treating him at work? In his work? Are you representing that? No, Your Honor, and that's what went forward to summary judgment and was dismissed on summary judgment, which is not on appeal here. Did it become that a fact question? Was there was interference or not, or whether or not you engaged in the question? No, Your Honor. To your example, first, this case is the opposite of what you had suggested. In this case, Mr. Kelly is a lawyer himself. He was represented by lawyers. What does that have to do with it? What's the relevance of that? Because it's not someone who had an inability to articulate what their problems were linked to the accommodation that they wanted. This was highly trained people represented by competent counsel. And I don't agree as to the letter itself, that the letter itself put the town on notice that what these civility requests were, were tied to any specific disability. Now, again, Judge Jones let the case go forward on requests for reduced stress and other things that maybe in retrospect are what he was trying to say in the letter, but that's not what was said in the letter itself.  That's my response to your question. I don't think that anybody in the town said you've come forward to us with requests for accommodation. We refuse to engage with you. We refuse to grant you anything. What actually happened was Mr. Kelly is the town manager. He was managed by these politicians, part-time people who were in and out of the building. He did what he wanted. He took breaks when he wanted to. He took short walks when he wanted to, and that's what Judge Jones ultimately decided. So, you know, let me ask you this. So you think that the accommodation could never be they have to change the way they address him? Because you're saying it's okay because it was satisfied because he could do those things that alleviated his problems. Are you saying that as a matter of law, because they were politicians, and you used the word, not me, and therefore they could really never be restrained? Even if he had articulated that, would it be any different? No, sir. I think had the letter said more along the lines of what has been discussed today, of I'm Greg Kelly, these are my disabilities. If I had short breaks, then that would alleviate my stress and therefore that would help my high blood pressure. That that would be a much different case than what we're faced with today. Oh, but I'm saying, I may have not articulated it well. I'm saying if the case was, is not, in other words, so I see what you're saying. You're saying that as long as he could somehow get his blood pressure down and his anxieties down, that's the only question, but it never is a question of them having to change the way they react to him. So you're saying it's totally a one-sided way. As long as we find a way to get you well, we never have to change what we do. Isn't that the logical extent of your argument? No, sir, that wasn't what I was trying to say. That seemed to me what the logical extent of it is. We told you, look, walk around the park. Take some breaks. That's fine. That's fine. On our side of the ledger, we're fine. We're good. We can talk the way we want. It's up to you to blow off steam, to go and, you know, yell in the park alone so that no one hears your cry. You come back, you're better, it's fine. But we don't have to change the way we talk to you at all. Is that what you're saying the law would be? No, sir. I think you two are approaching this at a different point in time. And that's where maybe the confusion is. But what you're saying is, I think, different than a response to what Mr. Kelly said. And Judge Gregory is saying what you're saying is a response to what Mr. Kelly said. Is that right? I don't think that the town ever said we don't have to accommodate any disability. I think what happened as a practical matter was Mr. Kelly had suggested accommodations, and he did those accommodations, so he was accommodated. But the context of the letter starting this process is different than what ended up happening at the end was that there were interactions between individual council members and Mr. Kelly, and he said I needed to take short walks, and he did. So Mr. Kelly says that the letter is a request for accommodation under the Americans with Disabilities Act. And in response to that, you say... That it is not as a matter of law, and that's what Judge Jones ruled on the motion to dismiss and the motion to amend was that... What he's telling us is factually, in fact, the individual people, he did ultimately get whatever he wanted. Is that what this he could take the walks is about? Yes, Your Honor. It's sort of hard for us to piece all that together. Sure. And that's because that ruling was not appealed. The ruling on motion for summary judgment, the judge took in all the evidence that had come forward throughout this entire process, not just the letter, was that there was no failure to accommodate in this case, and that ruling has not been appealed. There was a failure to accommodate even though there wasn't a request for accommodation in the letter. Right. But because of some other communications between the parties, and there was accommodation in response to them. Is that right? Yes, Your Honor. What about the interference claim? How was that as a matter of law? As Judge Jones ruled on the motion to dismiss and the proposed motion to amend, there were no factual allegations that there was any interference with his attempts to move forward with his ADA claims. He had filed two EEOC charges, and he filed another one after he resigned, and there just weren't any factual allegations that the town interfered with any of that process. Now, I may think you recall you said that the town can only act as a body, I think five people, and it takes three out of five for them to act as a body. Yes, Your Honor. So you're saying that if one of those persons told him something, that doesn't count? That's my legal position. Judge Jones didn't agree with that either. I agree. One of them represents his employer. It doesn't have to be collectively. Take a vote on whether or not we are your employer. That's an interesting point, and I would love this Court to rule on that issue. Mr. Kelly says in the amended complaint, actually in response to one of the council members telling him he had to do something or he was going to be fired, Mr. Kelly said, well, you don't have the power to fire me. You're just one individual council person. So I can see the argument that one individual, even though that person couldn't vote by themselves, could add stress, but as a matter of law, one person couldn't fire Mr. Kelly. One person couldn't demote him. One person couldn't take away any of his benefits. One person could interfere with his experiences working as an employee? One person could yell at him, yes, sir. And that's what, under the law, that can't be accommodated? It's like having five supervisors and only one is giving you a problem. Well, let's three out of five give you a problem. Sorry. No, one of them is enough. That was what the district court told me, to your honor, yes, sir. And so what was the ultimate conclusion on that? The ultimate conclusion was that the facts were not alleged to get past the interference, that there was no specific interference. The two claims that were allowed to go to summary judgment were retaliation and failure to accommodate, and those two were dismissed. And the case went to trial on a breach of contract case that a defense verdict was returned in. So as a matter of law, there was no interference? The plaintiff had not stated sufficient facts to get past the motion to amend on the interference claim. Chief, do you have any further questions? No, nothing. Thank you very much. You have some rebuttal time. Thank you, your honor. I just wanted to first direct the court to the record at 252 paragraph 48. We've talked a lot about the EEOC charges, but in that paragraph of the amended complaint, Mr. Kelly specifically alleged that he disclosed to the public that he suffered from high blood pressure and that was exacerbated by the stresses and pressures of the workplace. He also detailed his panic attacks and anxiety, which led to disorientation and confusion. And each of these conversations occurred in a one-on-one conversation between Mr. Kelly and the above town leaders. Did he tell them that he needed those accommodations because of that? Is that also alleged in his complaint? He sent the letter, your honor. He sent the letter. I appreciate that there's a little bit of a breadcrumb trail here. I do. But, I mean, I also think that the law says that that's okay because, as Justice Gregory was saying, not everything always has to be in the perfect package at this stage. What's supposed to happen at this stage, as this court ruled in Jacobs, is that you move to the interactive process. And that is where the company and the employee work together to try to get to what's reasonable. And what I'm hearing is a lot of, well, those things in the letter just weren't reasonable because nobody could understand it. And that's not the point. You're not hearing that from me. Maybe you're hearing that because you've had an active bench, shall we say. You're not hearing that from me. What I would like is the bridge, something that said to the employer, these are my problems and I need this accommodation to solve these problems. And that doesn't seem to me to be so much to ask of an employee who wants accommodation. And I hear you, your honor. And I just, at the pleading stage, though, which is where we're at in this case. Well, actually, no, this never really went to summary judgment because the court ruled as a matter of law that this request couldn't be a request. So the failure to accommodate claim. It's not a request for accommodation. We all know that. A disability accommodation. You would acknowledge that. It doesn't say anything about accommodating me because of a disability on the letter. It's not a request for accommodation under the Disability Act, is it? It's not. It has to be teamed with something else. Your honor, I'm going to have to agree to disagree with you on that. I think the law is clear that those things together. Tell me another case in which a letter like this is regarded as sufficient. Because I haven't found one. I have found cases where letters like this have not been found sufficient. Well, your honor, I would, I mean, I have looked at. Just give me your best case. Sorry. Let me find it. This can't be the first case, right? You're relying on some precedent, right? Well, your honor, I am, well, I don't have a case that specifically has a letter like this, your honor. I have a case where somebody said I have disabilities and then sent emails that said I need help. And did the emails relate to the disability? The emails were enough to put the, to link the two together. And I am. See, what I'm interested in is cases in which there's disability and then there's a request for accommodation. The EEOC. But no reference in the request for accommodation to the disability. Well, I'm looking at EEOC versus CACI secured transformation. The site is 2021 U.S. District Lexus 87964. Is that what you're giving me? It's district of Maryland, your honor. That's a case that I think is helpful. I also think that. That the district court of Maryland rock versus McHugh case also talks about the fact that the disability and the, the need for accommodations don't have to come together. They don't have to be in the same document. They just have to relate to each other to speak to each other. Right. Right. Well, I have a couple of circuit cases that seem to be exactly like this situation, not our circuit, but others. That hold against you. Okay. So you, have you seen those cases? I don't know without you telling me your honor, which cases. Have you seen cases from circuit courts that hold against you on similar facts? I have seen cases that hold that certain things can't be accommodations. Like for example, Manson, but I. The failure to link the two. Have you seen those cases? You've never seen a case like that? Yes, your honor. I have seen cases like that. And I think that that's why I was referring to Manson, which is a case in which a person with autism asked for some negative licensure documents to be removed from a database because he was saying that he couldn't get a job because these negative licensure documents were out there. And the court ruled that in those, in that case, that wasn't even on a motion to dismiss, that wasn't a request for accommodation because he wasn't employed. Requiring you to provide some kind of specificity and some kind of link. That works to the advantage of disabled individuals because it gives the employer an opportunity to understand what the disabilities are and how they might best address those disabilities. Because the scheme that the statute sets for actually works to the advantage of disabled individuals by putting the employer on notice and by giving the employer some idea of what he or she might do to improve things. And if all of those things are absent, and here the notice of the disability is absent, the request for accommodation is absent, the link between the two or how one relates to the other is absent, everything is absent. And that, it seems to me, the position you're taking worked to the detriment of disabled persons. But we will let you go over and if Judge Gregory has further questions of you or Judge Mott has further questions of you, we'd be happy to hear. Counsel, I have a question. You brought an interference claim, correct? We did, Your Honor. So what was the factual basis alleged for your interference claim? In the interference claim. I think it's very important here. Your Honor, we alleged in that claim that Mr. Kelly actually engaged in activity that was protected by the ADA when he filed his EEOC charges and when he made his request for accommodation. So that's the first element. We alleged that he engaged in the exercise or enjoyment of ADA rights. And this is kind of going to what we heard a little bit about from the defense counsel. After Mr. Kelly received no response to his request for accommodation letter, his health continued to decline. And so on his own, without asking for it and without receiving it, he started trying to do some things like, for example, park his car farther away from the building and walk into work to try to reduce his stress. This is exactly what we're talking about when we talk about what he got to do. How long did his letter go unresponded to? I'm sorry, Your Honor? How long did his letter go unresponded to? Well, the letter went unresponded to completely for three months. That's right, three months. And then we talked about, you didn't tell me, I didn't know what it is. Three months, nothing. Right. And then he got a letter that said he would, they would engage in the process. So clearly at some point, I guess after three months, they realized there was a link and that they would engage in the process. But then they never did anything after that when Mr. Kelly responded to them about it. Counsel, you have to, you hear the questions from the court. I mean, you've got to explain what the factual questions that are still open. Right. They did nothing. And I want to be sure I understand because apparently there are a lot of players. These, I don't know, board members or whatever. And none of them talked to him during the three months either, right? No. There was no response. And this is in response to the letter. Correct. I mean, they talked to him about, you know, work. They yelled at him and called him profane names and, you know, told him they were going to fire him if he didn't get on board with their agendas. I mean, they did all that. We're all adults here. What profane things did they call him? Asshole. Right, right. In a public meeting. You've got to say those things because that's what we're talking about. So those are the kind of things that happened after he sent the letter. Did they happen before the letter, too? My understanding was that he was unhappy with the work atmosphere. And that's what the letter talks about. The work environment was very toxic, Your Honor, to begin with. And, yes, and that is why we got to where we got to. It was worse after the letter? Correct. It was worse. And that was all in your brief, right? You're pointing out how it's worse. Yes. In the brief we cited to the record where the ---- And the court said as a matter of law that couldn't be interference, right? The court did, Your Honor. The court said we did not satisfy that burden. And I would ---- The court just said we couldn't make the ---- It just wasn't interference because, you know, he didn't engage in ---- I'm sorry, Your Honor. I'm losing my train of thought right here on that. But I think ultimately it was pretty brief what the court said about it. And it was just kind of like, well, you didn't allege enough facts to show that there was interference related to your disability. That was, you know, you ---- It wasn't the link. It wasn't related to disability. And the facts of the case are that Mr. Kelly actually, you know, when he ---- and I was starting to talk about this. You know, when he tried to take these little walks, that was when council members started, you know, ridiculing him for that. Greg, you look like a street walker. You know, so ---- Counsel, if you've never put the employer on notice of what the disability is, how could there be discrimination on the basis of disability? Well, he did. I mean, I did talk about that, Your Honor. I understand that the charges, you know, are one way of notice. But then also, as I stated in paragraph 48, he had specific conversations with several members of the council where he expressed that he had disabilities. He expressed that the condition was exacerbated by the stresses and pressures of the workplace. And he had these conversations with each one of them personally, in addition to filing the EEOC charges where he set forth his disabilities and said he was being discriminated against as a result of his disability. The EEOC charges, yes, Your Honor. September, one was filed in September of 2017. One was filed in December of 2017. And the letter happened in January of 2018. And what about all these conversations? The conversations happened ---- Before or after the letter? After the letter, Your Honor. After the letter. So, and then ---- To see whether the letter was sufficient, your submission is we look at the EEOC charges in combination with the letter. Is that right? Well, I think that the employer is on notice because they've received those charges. And all of them said they did. Whatever those charges are. Right, and I mean ---- Only on notice of something else. Only on notice of those charges, right? A notice of the disability discrimination in the charges, correct, and that he had disabilities, correct. And then the letter doesn't refer to any disabilities, but because they already have notice that he has, according to you, as he has these disabilities, they should have put two to two. Well, and the fact that it says I'm making this request, you know, under the Americans with Disabilities Act. There's no, these are, my law clerks probably could file the same kind. They're all workplace improvement. That's what he calls it even. Well, and I understand that ---- You don't dispute that, do you? I don't dispute that the letter is framed in a way, you know, it's framed in a way that, you know, somebody is trying to keep their job, right? They're just trying to say, can we try to make this better? You know, they're not trying to be ---- Have your cake and eat it, too. But I understand that if you're thinking that when they read the letter, they have to keep the EEOC charges in mind, because that's the bridge, right? And the EEOC charges precede the letter, so they have to know there's a disability claim. Then I don't understand why you would think that the letter is I have to keep my job. The letter is supposed to be, according to your client, associated with the earlier EEOC charges. It is, Your Honor. I mean, it is, and that is what we've said. And I would just point out that clearly the town at some point recognized the link because they did respond to it by saying they would engage in the interactive process. But then after Mr. Kelly, you know, responded back to them about it and tried to attempt that, there was no response after that. So is that it, Your Honors? I think we've given you a great deal, 10 minutes of extra time. It was my fault. No, thank you so much. I appreciate the opportunity. Thank you. We would normally welcome the chance to come by and shake hands, but as a result of the COVID situation and everything, we're just going to have to content ourselves with waving to you and let you know that we very...
judges: J. Harvie Wilkinson III, Roger L. Gregory, Diana Gribbon Motz